

DISTRICT COURT
DISTRICT OF MARYLAND

2014 FEB 24 AM 11:27

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY



U.S. Department of Justice

United States Attorney
District of Maryland

| | | |
|---|---|---|
| David I. Sharfstein<br>Assistant United States Attorney<br>David.Sharfstein2@usdoj.gov | Suite 400<br>36 S. Charles Street<br>Baltimore, MD 21201-3119 | DIRECT: 410-209-4991<br>MAIN: 410-209-4800<br>FAX: 410-962-0717 |

January 13, 2014

Alan R. L. Bussard, Esquire
405 Allegheny Avenue
Towson, Maryland 21204

      Re:    Plea Agreement in *United States v. Mark Johnson*, et al., Crim. No: JFM-13-0360

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by January 22, 2014, it will be deemed withdrawn. The terms of the agreement are as follows.

### Offense of Conviction

1.    The Defendant agrees to plead guilty to Count One of the indictment now pending against him, which charges him conspiracy to commit bank burglary, in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2113(a). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.    That two or more persons agreed to commit bank burglary, in violation of 18 U.S.C. § 2113(a), in that the conspirators agreed to enter and attempt to enter a building used in whole or in part as a bank whose deposits were then insured by the Federal Deposit Insurance Corporation (FDIC) and/or the National Credit Union Administration ("NCUA"), with the intent to commit a felony affecting such bank and any larceny.

1

    b. That the Defendant was a member of the agreement;

    c. That the Defendant joined the conspiracy knowing of its objective and intending to achieve that objective;

    d. That at some time during the existence of the conspiracy, at least one of its members performed an overt act in order to further the objective of the agreement.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: 5 years imprisonment, 3 years of supervised release, and $250,000 fine. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

      d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

      e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that *if* he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond a reasonable doubt:

Beginning no later than September 2011 through the date of his arrest in July 2013, the Defendant, Mark Johnson, conspired with his codefendants, David Paschall, Chad Paschall, Mark Johnson, and William Metcalf, as well as others who have been charged in a related case, including Carl Paschall Sr. and Carl Paschall Jr., to commit commercial burglaries in Maryland, Virginia, West Virginia, and Pennsylvania. The conspirators agreed to unlawfully enter commercial establishments, such as gas stations, convenience stores, banks, and credit unions, during the night for the purpose of stealing items of value, including cash, money orders, stamps, silver bars, jewelry, cigarettes, lottery tickets, prescription drugs, food, beverages, safes, laptop computers, cell phones, electronics, vehicles, and other valuable items. On many occasions, the conspirators stole or attempted to steal cash from Automated Teller Machines (ATMs).

Although the methods used by the conspirators varied slightly depending on the business to be burglarized, the conspirators usually cut power lines, telephone lines, cables and other wires prior to entering the business. In order to gain unlawful entry, the conspirators used tools such as vise grips, sledgehammers, chopsaws, grinders and blow torches. After unlawfully entering the business, the conspirators often waited – sometimes for several minutes, sometimes for up to several hours – before ransacking the business of its valuable items.

The Defendant agreed that he committed, or attempted to commit, dozens of commercial burglaries with one or more of the above-named coconspirators, and that the loss to those business (in terms of both property damage and stolen items) exceeded $800,000. For purposes of this plea agreement, he specifically admits that he participated in the following overt acts in furtherance of the conspiracy:

- On April 7, 2012, the Defendant, David Paschall, William Metcalf, and Ronald Henderson purchased disposable "burner" phones from a Wal-Mart in Glen Burnie, MD for the purpose of using the phones during a commercial burglary later that evening. On April 8, 2012, in the early morning hours, the conspirators unsuccessfully attempted a bank burglary at the UVA Credit Union located at 56 Stoneridge Drive in Ruckersville, Virginia. The UVA Credit Union was then insured by the NCUA. Prior to entry, the conspirators cut all of the cables and

4

power lines outside the bank. Once inside, the conspirators tripped a motion sensor alarm. Soon thereafter, law enforcement arrived at the scene. A foot pursuit ensued and the conspirators escaped. The conspirators left behind a bag full of entry tools and a Stihl chop saw. The serial number from the Stihl chop saw revealed that it had previously been stolen from a construction company in Anne Arundel County, Maryland.

- On November 24, 2012, just before 2:00 am, the Defendant and three coconspirators committed a commercial burglary at Steel & Wire Products Company, 1501 West Patapsco Avenue, Baltimore, Maryland 21230. The conspirators drove a truck through the fence surrounding the lot. They then cut the telephone lines and pulled several cameras off the walls. Three safes were taken, inside of which were three handguns. Cash was also taken.

- On the evening of April 13, 2013, the Defendant, David Paschall, and Ronald Henderson were followed by law enforcement to Richmond, VA. At 10:29 pm, during a phone call that was intercepted pursuant to court order, David Paschall was overheard speaking with the Defendant and Ronald Henderson about a bank and a check cashing business. During a second call at 11:12 pm, David Paschall told the person on the phone that he was trying to find the right spot, which meant that they were scouting locations to burglarize. At 11:25pm, law enforcement observed the conspirators at a gas station. While the vehicle was being filled with gas, the Defendant climbed onto the bed of the truck and opened a silver tool box. He removed a large yellow motorized masonry saw. The conspirators remained in the area outside Richmond, VA for several hours scouting locations to burglarize. On April 14, 2013, at 2:32 am, David Paschall told a third party on his phone that things were not going well and that they were not going to take any unnecessary chances. Later that morning, David Paschall and the Defendant then dropped the Ronald Henderson off at his home in Pasadena, Maryland. Law enforcement then conducted a traffic stop of the vehicle and, during a search of the vehicle, recovered a dark colored coverall, three pairs of gloves, a flash light, a black jacket, tools, and controlled substances. A Colt Junior semi-automatic firearm stolen was also recovered. That firearm was stolen on November 24, 2012 during a commercial burglary at Steel & Wire Products Company, in Baltimore, Maryland 21230. The firearm was loaded with 6 rounds, with one in the chamber.

- On the evening of May 17, 2013, the Defendant, David Paschall, Chad Paschall, and Kenneth Smith attempted to burglarize an Exxon gas station in Finksburg, Maryland. Chad Paschall served as the lookout while the Defendant attempted to enter the business. David Paschall served as the getaway driver. The Defendant cut the phone lines to the Exxon and attempted to pry open the door to the business. Around this time, law enforcement responded to the scene and the conspirators fled.

5

Based on his history of committing similar burglaries, the Defendant possessed the specific skills necessary to carry out this conspiracy. For example, the Defendant knew how to cut the phone lines and other cables outside business, and he was skilled at breaking into the commercial establishments. The Defendant served as a leader of this conspiracy by teaching other coconspirators, including Carl Paschall Jr., these skills. The Defendant served as an organizer by selecting many of the commercial establishments that were burglarized.

The parties agree that the above statement is only a summary of the evidence against this Defendant if the parties went to trial. The parties agree that there are additional overt acts and numerous co-Defendants involved with this Defendant.

7. The parties stipulate and agree that pursuant to U.S.S.G. §2B2.1(a)(2), the base offense level for this conduct is **12**. The parties further agree that:

   a. the offense involved more than minimal planning, and therefore **2 levels** are added pursuant to U.S.S.G. §2B2.1(b)(1);

   b. the total damage caused by the conspiracy is more than $800,000, and therefore **5 levels** are added pursuant to U.S.S.G. §2B2.1(b)(2);

   c. a dangerous weapon was possessed during the commission of the offense, and therefore an additional **2 levels** are added pursuant to U.S.S.G. §2B2.1(b)(4);

   d. a firearm was taken during the commission of the offense, and therefore **1 level** is added pursuant to U.S.S.G. § 2B2.1(b)(3); and

   e. the Defendant was an organizer and leader of criminal activity, and therefore **2 levels** are added pursuant to U.S.S.G. §3B1.1(c).

The application of the guidelines results in an adjusted offense level of **24**.

8. This Office does not oppose a **2 level reduction** in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the offense level is determined to be level 16 or greater, this Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for **an additional one-level decrease** in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

9.   The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

### Obligations of the United States Attorney's Office

10.   At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

11.   The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Restitution

12.   The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses, to be paid jointly and severally among the Defendant and his codefendants. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the conspiracy. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Forfeiture

13.   The Defendant understands that the court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order will include assets directly traceable to his offense, substitute assets and/or a money judgment equal to the value of the property subject to forfeiture. Specifically, as a consequence of the Defendant's plea of guilty to Count One of the indictment now pending against him, which charges him with conspiracy to commit bank burglary, in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2113(a), the Court will order the forfeiture of property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of the offense, as well as property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense. The property to be forfeited includes:

    a.   a money judgment in the amount of $500,000;

    b.   a Rossi rifle, serial number SP706455, and a rifle case, both seized

7

from 2627 Hollins Ferry RD Baltimore, MD 21230.

14. The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15. This office will recommend to the Attorney General that any forfeited funds and proceeds from forfeited property be remitted or restored to eligible victims of the offense, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. Pt. 9, and other applicable law, it being understood that this office has authority only to recommend such relief and that the final decision of whether to grant relief rests with the Department of Justice, which will make its decision in accordance with applicable law.

### Assisting the Government with Regard to the Forfeiture

16. The Defendant agrees to assist fully in the forfeiture of the foregoing assets. The Defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant also agrees to give this Office permission to request and review his federal and state income tax returns, and any credit reports maintained by any consumer credit reporting entity, until such time as the money judgment is satisfied. In this regard, the Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) as well as whatever disclosure form may be required by any credit reporting entity.

### Waiver of Further Review of Forfeiture

17. The Defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

### Waiver of Appeal

18. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

     a)  The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

     b)  The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the guidelines range determined by the Court; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below the guidelines range determined by the Court.

     c)  Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

     d)  The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

    19.  The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

    20.  The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office

nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

21. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
David I. Sharfstein
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2-24-14
Date

Mark R. Johnson
Mark Johnson

I am Mark Johnson's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

2/24/14
Date

Alan Bussard, Esq.